# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ALLEN B. WILLIAMS,

                Plaintiff,

     v.

MATTHEW CATE, et al.,

                Defendants.

_____/

CASE NO. 1:09-cv-00468-OWW-YNP PC

ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE

(Doc. 12)

RESPONSE DUE WITHIN 30 DAYS

Plaintiff Allen B. Williams ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Kern Valley State Prison in Delano, California ("KVSP"). Plaintiff is suing under section 1983 for the violation of his rights under the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Plaintiff names Cheryl Wegman (community partnership manager), Rebecca Grissom (business service manager), Paul Gonzales (business manager), Ambrose Rogers (food service manager), Mark Howard (food service manager), Daniel Mehlman (Jewish chaplain), Michael Bradley (Protestant chaplain), Tom Arlitz (warden), Nate Dill (associate warden), D. D. Ortiz (associate warden), F. Hernandez (associate warden), D. Traverse (associate warden), J. Castro (chief deputy warden), K. Harrington (warden), G. D. Lewis (chief deputy warden), P. R. Sanchez (captain), G. R. Hudson (captain), L. Wood (captain), E. G. Flores (captain), T. Billings (appeals coordinator), D. Tarnoff (appeals coordinator), B. Daveiga (appeals coordinator), C. Pfeifer (appeals

1

coordinator), W. Adams (appeals coordinator), Francisco Diaz (Catholic chaplain), C/O Murphy (officer), C/O Riezebos (officer), N. Grannis (chief inmate appeals), Matthew Cate (secretary, Department of Corrections and Rehabilitation), and A. Hedgpeth (former warden) as defendants. For the reasons set forth below, The Court finds that Plaintiff's complaint states some cognizable claims and orders Plaintiff either to notify the Court of his willingness to proceed only on the claims found to be cognizable in this order, or to file an amended complaint to cure the deficiencies found in his non-cognizable claims.

## I.   Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

1   Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2   statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

3   **II.   Background**

4        **A.   Procedural Background**

5        Plaintiff filed the Original Complaint in this action on March 12, 2009.  (Doc. #1.)  The

6   Court screened Plaintiff's Original Complaint on July 31, 2009.  (Doc. #11.)  Plaintiff's Original

7   Complaint was dismissed for failing to comply with the requirements of Federal Rule of Civil

8   Procedure 8.  Plaintiff was given leave to file an amended complaint.  Plaintiff filed his First

9   Amended Complaint on August 28, 2009.  (Doc. #12.)  This action proceeds on Plaintiff's First

10  Amended Complaint.

11       **B.   Factual Background**

12       Plaintiff is a practicing member of "The House of Yahweh Faith."  (Compl. 9:22-26.)

13  Plaintiff alleges that Defendants are violating his constitutional rights as well as his rights under the

14  RLUIPA by interfering with his practice of religion.

15       Plaintiff alleges that Defendant Cheryl Wegman is the "Community Partnership Manager for

16  Religious Services Department."  (Compl. 12:1-5.)  Plaintiff complains that Wegman violated his

17  rights by ignoring his inmate appeals requesting religious accommodation.  Plaintiff alleges that

18  Wegman circulated a memorandum falsely accusing the House of Yahweh for being a hate group,

19  "forged" Plaintiff's "religious events package"[1], denied requests for accommodations for the

20  religious "Feast of Passover meal," and has shown bias toward the House of Yahweh faith by giving

21  preferential treatment toward Jewish inmates and chaplains.  (Compl. 12:8-26.)  Specifically,

22  Plaintiff made requests for kosher meals and the request was denied by Wegman.  (Compl. 12:20-

23  13:6.)  Plaintiff requested an eight day "Feast of Passover/Unleavened Bread" and was told that he

24  would only receive a one-day meal.  (Compl. 13:15-18.)  Defendant Howard further told Plaintiff

25  that he would not receive Jewish kosher meals because Jewish inmates have special dietary

26  privileges and a separate food budget which is not distributed to other religious groups.  (Compl.

27

28
_____

[1] It is unclear what Plaintiff means by "forging" a "religious events package."

13:19-27.)  Plaintiff complains that Defendant Gonzales ignored his requests for information, pursuant to the Freedom of Information Act, detailing the budgetary expenditures for inmate religious services.

Plaintiff claims that Defendant Bradley was KVSP's main chaplain and as such was a "Facilitator of the House of Yahweh Faith Group" for "Sabbath Day Chapel services." (Compl. 14:16-18.)  Plaintiff complains that Bradley failed to show up for the services and thus refused to accommodate the needs of House of Yahweh practitioners. (Compl. 14:18-21.)  Bradley would refuse to sign "service memorandums" causing Plaintiff and other House of Yahweh inmates to be unable to use the prison's chapel. (Compl. 14:21-27.)  Bradley also sent "Hate Group Propoganda" against the House of Yahweh to Wegman and other administrators. (Compl. 14:27-15:3.)  Bradley also returned "religious artifact orders" from Plaintiff and other House of Yahweh inmates back to vendors. (Compl. 15:15-17.)  Bradley, Wegman, and Gonzales refused to distribute money from the "Religious Service Budget" to accommodate the needs of House of Yahweh members, while spending it on Christian and Jewish inmates. (Compl. 15:18-21.)  Specifically, Plaintiff requested funds for purchasing "House of Yahweh Holy Scriptures," but was told to seek a donation of books and other materials from group leaders outside the prison. (Compl. 15:21-25.)

Plaintiff claims that Defendant C/O Riezebos falsified a "Disciplinary Rules Violation Report" ("RVR") just before Plaintiff's appearance before the "Board of Prison Terms/Hearings," which prejudiced Plaintiff's consideration for release on parole. (Compl. 16:6-12.)  Plaintiff lost phone, yard, and quarterly package privileges and was denied parole for 5 years. (Compl. 16:11-13.)

Plaintiff claims that Defendant Diaz was asked to intervene on behalf of House of Yahweh members to prevent strip searches in the "main chapel area." (Compl. 16:25-27.)  Plaintiff complains that correctional officers strip searched Plaintiff and other House of Yahweh inmates while they were conducting religious services in the chapel. (Compl. Ex. B.)  Defendant Diaz was asked to talk to Wegman about the incident, but did nothing. (Compl. 16:27-28.)

Plaintiff claims that Defendant Matthew Cate failed to perform his duties as secretary of CDCR, causing Plaintiff's rights to be violated.  Plaintiff alleges that Cate, the chief of inmate

///

4

1  appeals (Defendant Grannis), and wardens at KVSP failed to take appropriate disciplinary action

2  against the other defendants who committed the violations.  (Compl. 17: 25-28.)

3  **III.   Discussion**

4     **A.   Free Exercise of Religion/RLUIPA**

5     Plaintiff claims that Defendants violated his constitutional right to free exercise of religion

6  under the First Amendment, as well as his rights under the RLUIPA.  The First Amendment of the

7  United States Constitution provides that "Congress shall make no law respecting the establishment

8  of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const., amend. I.  "Inmates clearly

9  retain protections afforded by the First Amendment . . . including its directive that no law shall

10  prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)

11  (citing Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz v. Beto, 405 U.S. 319 (1972).  However,

12  "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and

13  rights, a retraction justified by the considerations underlying our penal system.'"  Id. (quoting Price

14  v. Johnson, 334 U.S. 266, 285 (1948)).  "In order to establish a free exercise violation, [a prisoner]

15  must show the defendants burdened the practice of his religion, by preventing him from engaging

16  in conduct mandated by his faith, without any justification reasonably related to legitimate

17  penological interests."  Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997).  Plaintiff must show

18  that his practice is both "'sincerely held'" and "'rooted in religious belief.'"  Shakur v. Schriro, 514

19  F.3d 878, 884 (9th Cir. 2008) (quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)).

20     The RLUIPA provides:

21           No government shall impose a substantial burden on the religious
             exercise of a person residing in or confined to an institution. . . , even
22           if the burden results from a rule of general applicability, unless the
             government demonstrates that imposition of the burden on that
23           person–
             (1) is in furtherance of a compelling government interest; and
24           (2) is the least restrictive means of furthering that compelling
             government interest.
25

26  42 U.S.C. § 2000cc-1.  In order to state a claim for violation of RLUIPA, a plaintiff must

27  demonstrate that the defendants substantially burdened the exercise of his/her religious beliefs.

28  Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  If the plaintiff meets that burden,

1   the defendants must demonstrate that "any substantial burden of the plaintiff's exercise of his/her

2   religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive

3   means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA

4   is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."

5   Id. Under RLUIPA, "religious exercise" is defined to include "any exercise of religion, whether or

6   not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Greene

7   v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008). "In fact, RLUIPA 'bars inquiry into

8   whether a particular belief or practice is 'central' to a prisoner's religion.'" Id. (quoting Cutter v.

9   Wilkinson, 544 U.S. 709, 725 n.13 (2005)).

10        Plaintiff alleges that he made requests to KVSP supervisors for accommodations for House

11   of Yahweh inmates. Specifically, Plaintiff requested eight day accommodations for the "Feast of

12   Passover/Unleavened Bread" and kosher meals. Plaintiff's request was denied by Defendant

13   Wegman and was told by Wegman that instead he would only be given a one day feast and was

14   denied kosher meals, forcing House of Yahweh members to fast. Wegman allegedly told Plaintiff

15   that Defendant D. Ortiz "does not recognize our right to have the eight day [f]east. . . ." (Compl.

16   13:15-18.) Defendant Howard also told Plaintiff that he would not receive dietary accommodations.

17   Thus, Plaintiff has sufficiently alleged that Defendants Wegman, Ortiz, and Howard substantially

18   burdened the exercise of his religious beliefs. Plaintiff states a cognizable claim against Defendants

19   Wegman, Ortiz, and Howard for violation of Plaintiff's right to free exercise of religion and the

20   RLUIPA.

21        Plaintiff alleges that Defendant Bradley was the chaplain at KVSP and was responsible for

22   conducting House of Yahweh services at the chapel. Bradley failed to show up for services leaving

23   House of Yahweh practitioners unable to attend religious services. Plaintiff also alleges that House

24   of Yahweh inmates were unable to use the chapel because Bradley refused to sign "service

25   memorandums," sent "Hate Group Propaganda" to prison administrators, and returned House of

26   Yahweh religious artifact orders to vendors. Plaintiff states a cognizable claim against Defendant

27   Bradley for violation of Plaintiff's right to free exercise of religion and the RLUIPA.

28   ///

Plaintiff alleges that Defendant Paul Gonzales "refused to distribute any monies from the Religious Service Budget to the needs and requests of House of Yahweh Group members/participants, while spending it on Christ[ia]n and Jewish [i]nmates." (Compl. 15:18-21.) Plaintiff requested funds for purchasing House of Yahweh Holy Scriptures.  While the preferential distribution of funds to certain religious groups but not others may make Gonzales liable for violation of the Equal Protection Clause, see discussion infra Part III.B, Plaintiff has failed to allege that Gonzales' actions "substantially burdened" Plaintiff's exercise of religion.  The purpose of the Free Exercise Clause/RLUIPA is to prohibit actions by state officials that interfere with the exercise of religion.  The Free Exercise Clause/RLUIPA does not require prison officials to proactively promote the practice of religion by disbursing financial aid to religious groups.  Plaintiff's right to be treated on equal footing as other religious groups is protected by the Equal Protection Clause, not the First Amendment Free Exercise Clause/RLUIPA and the Court will construe Plaintiff's claim as an equal protection claim.

Plaintiff alleges that Defendant C/O Riezebos "was present in a meeting with . . . Wegman . . . and was inter[r]upting Plaintiff's attempts to correct the problems about our Feast Event Package. . . ." (Compl. 16:20-24.)  Plaintiff's vague allegation does not sufficiently demonstrate how Riezebos "substantially burdened" Plaintiff's exercise of religion.  Plaintiff does not elaborate what he means by "interrupting Plaintiff's attempts to correct the problems about our Feast Event Package" and the Court cannot find that Riezebos' actions, as alleged, constitute a substantial burden on Plaintiff's exercise of religion.  Plaintiff fails to state a claim against Riezebos for violation of Plaintiff's right to free exercise of religion or the RLUIPA.

### B.    Equal Protection Claims

Plaintiff claims that Defendants actions also violated his rights under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal

7

protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005). Religion is an inherently suspect classification.  See, e.g., City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976); Christian Science Reading Room Jointly Maintained, Inc. v. City & County of San Francisco, 784 F.2d 1010, 1012 (9th Cir. 1986).

Plaintiff alleges that he was discriminated against on the basis of his religion because Defendants Bradley, Wegman, and Paul Gonzales provided Christian and Jewish inmates with funds from the "Religious Service Budget" and House of Yahweh inmates did not receive any funds. Plaintiff also alleges that Jewish inmates were given dietary accommodations (kosher meals) and Defendants Wegman, Ortiz, and Howard denied dietary accommodations requested by House of Yahweh inmates.  Finally, Plaintiff alleges that Defendant Bradley conducted religious services for inmates of other religions, but did not conduct religious services for House of Yahweh inmates. Thus, Plaintiff states a cognizable claim against Defendants Wegman, Ortiz, Howard, Bradley, and Gonzales for violation of the Equal Protection Clause of the Fourteenth Amendment.

### C.    Due Process Claims

Plaintiff claims that Defendants violated his "administrative appeal process rights."  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff argues that his due process rights were violated by appeals coordinators for their practice of "estoppel screening," or rejecting Plaintiff's inmate grievances complaining about prison officials' failure to accommodate his religious needs.  Inmates have no liberty interest in the processing of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing

1  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  The failure to timely process inmate appeals

2  pursuant to state prison regulations is not an "atypical and significant hardship on the inmate in

3  relation to the ordinary incidents of prison life."  Nor did the delay, denial, or screening-out of

4  Plaintiff's inmate appeals, even if erroneous, result in an "atypical and significant hardship".

5  Plaintiff has no protected liberty interest in the vindication of his administrative claims.

6      Plaintiff alternatively argues that his due process rights were violated because he has a

7  protected liberty interest in release on parole, which is partially based on Plaintiff's participation in

8  "positive programming."  (Compl. 4:16-20.)  Plaintiff argues that appeals coordinators denied his

9  inmate grievances seeking religious accommodations, thus he was unable to participate in religious

10  activities, and thus it negatively impacted his eligibility for parole.  However, prisoners do not have

11  a protected liberty interest in access to rehabilitative programs that positively impact their parole

12  eligibility.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Rizzo v. Dawson, 778 F.2d 527, 531 (9th

13  Cir. 1985).

14      Thus, Plaintiff fails to state a claim against appeals coordinators for violation of his rights

15  under the Due Process Clause.  However, while the screening-out, ignoring, or denying of inmate

16  grievances is not in itself a violation of the Due Process Clause, appeals coordinators can be held

17  liable under other theories of liability.  For instance, if an appeals coordinator was put on notice

18  through the grievance process of an ongoing or future constitutional violation and had a reasonable

19  opportunity to prevent the ongoing or future constitutional violation, the appeals coordinator may

20  be held liable for failing to take any action to prevent the constitutional violation.  However, it is

21  unclear from Plaintiff's allegations whether the appeals coordinators named as defendants had a

22  reasonable opportunity to prevent the constitutional violations from occurring.  Appeals coordinators

23  generally do not violate the constitution by failing to discipline prison officials after a constitutional

24  violation has already occurred and is not ongoing.  Thus, Plaintiff's allegations fail to state a

25  cognizable claim against Defendants T. Billings, D. Tarnoff, B. Daveiga, C. Pfeifer, W. Adams, or

26  N. Grannis.

27  ///

28  ///

### D.     Claims Against Other Defendants

#### 1.     Defendant Diaz

Plaintiff alleges that Defendant Diaz was asked to "intervene" on behalf of House of Yahweh members after they were harassed with strip searches outside the chapel.  Plaintiff does not allege that Diaz participated himself in the harassing strip searches.  Plaintiff has failed to provide any law which suggests that the RLUIPA or the constitution requires Diaz to punish or confront other prison officials that committed constitutional violations in the past.  Plaintiff has not alleged that Diaz's own actions substantially burdened Plaintiff's exercise of his religion.  Plaintiff fails to state any claims against Defendant Diaz.

#### 2.     Defendant Mehlman

Plaintiff alleges that Defendant Mehlman, the KVSP Jewish Chaplain, told Defendant Howard that Plaintiff could not receive food from the budget allocated for Jewish inmates.  While Plaintiff may be entitled to accommodations for his exercise of religion under the First Amendment and RLUIPA, Plaintiff fails to allege facts that show how Mehlman's actions burdened Plaintiff's exercise of religion.  Plaintiff alleges that Mehlman failed to share funds allocated to Jewish inmates so that House of Yahweh inmates could eat kosher meals.  However, Plaintiff fails to provide any facts or law that suggests Mehlman has a duty under the First Amendment or the RLUIPA to share funds from his religious group with Plaintiff's religious group.  The Court is unable to find any precedent that suggests that it is impermissible for KVSP to allocate separate budgets for different religious groups.  While the failure to provide a budget for House of Yahweh inmates may violate the constitution because it impermissibly discriminates on the basis of religion, Plaintiff does not allege that Mehlman rejected Plaintiff's requests for funds or dietary accommodations.  Plaintiff alleges that Mehlman failed to share funds and food allocated for Jewish inmates.  The Court is unable to find any law that suggests that the chaplain for a different religious group is required under the Constitution or the RLUIPA to share that group's budget and dietary accommodations when prison officials unconstitutionally fail to provide equal treatment for all religious groups.  Thus, while the Court finds that Plaintiff has stated a cognizable claim against prison officials who denied

///

his requests for religious accommodations, Plaintiff has not alleged facts that would hold Defendant Mehlman liable for failing to share funds and dietary accommodations given for Jewish inmates.

### 3.   **Supervisory Defendants**

Plaintiff vaguely alleges that Defendant Cate failed to perform his duties as secretary of CDCR.  Plaintiff does not describe how Cate failed to perform his duties, except his allegation that Plaintiff failed to address grievances, "relieve Plaintiff[] of the deprivations and violations," and failed to take disciplinary action against his employees.  Plaintiff essentially seeks to hold Cate liable on under the theory of respondeat superior.  Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff has not alleged that Cate personally participated in the alleged deprivations, nor does Plaintiff otherwise link Cate to any alleged violation, such as by implementing any deficient policies, or having the knowledge and opportunity to prevent the violations from occurring.  Thus, Plaintiff fails to state any claims against Defendant Cate.

Plaintiff alleges that "All [w]ardens and [s]upervisors were informed of these violations and given the opportunity to rectify the situations which violated Plaintiff's rights, but chose to ignor[e] and condone the misconduct. . . ."  (Compl. 13:7-10.)  Plaintiff also alleges that Defendants M. Howard, A. Rogers, D. Mehlman, P. Gonzales, F. Diaz, and K. Harrington "participated in these deprivations."  (Compl. 13:5-6.)  While Plaintiff provides allegations about specific conduct by Defendants Howard, Gonzales, and Diaz, Plaintiff fails to provide any allegations about specific

conduct by Rogers or Harrington other than the vague allegation that they "participated" in the deprivations. Plaintiff's complaint also lacks specific factual allegations regarding the conduct of Defendants Tom Arlitz, Nate Dill, F. Hernandez, D. Traverse, J. Castro, G. D. Lewis, and A. Hedgpeth, who are identified as wardens or associate wardens. Plaintiff's vague allegation that they "participated" in the deprivation is not sufficient to hold them liable. Nor are they liable simply by being supervisors of employees who commit constitutional violations. Plaintiff must allege conduct that links each individual defendant to the alleged constitutional violations. Plaintiff fails to state any claims against Defendants Rogers, Harrington, Arlitz, Dill, Hernandez, Traverse, Castro, Lewis, or Hedgpeth.

### 4.    Other Defendants

Plaintiff names Defendants Rebecca Grissom[2] (business service manager), P. R. Sanchez (captain), G. R. Hudson (captain), L. Wood (captain), and E. G. Flores (captain) as defendants. Other than providing their rank/position, Plaintiff has failed to provide any allegations in his complaint that demonstrate what these defendants did, or how they are liable for the violation of Plaintiff's rights. Plaintiff fails to state any claims against Defendants Grissom, Sanchez, Hudson, Wood, or Flores.

### E.    Improperly Joined Claims

Plaintiff claims that Defendant Murphy and four other correctional officers harassed Plaintiff and other House of Yahweh members by strip searching them in the chapel. Plaintiff's strip search claim is factually unrelated to the claims that Plaintiff originally brought in this lawsuit and involve different defendants. Federal Rule of Civil Procedure 18(a) allows multiple claims against a single party and Federal Rule of Civil Procedure 20(a) allows multiple parties to be joined where the right to relief arises out of the same "transaction, occurrence, or series of transactions". However, unrelated claims involving different defendants belong in different suits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This is not only to avoid confusion, but also to ensure that prisoners

---

[2]The only factual allegations related to conduct by Grissom found by the Court is Plaintiff's allegation that Grissom approved an appeal that was partially granted by Defendant Wegman. (Compl. 6:19-7:2.) Plaintiff complains that the issues in the appeal were not fully addressed. Plaintiff's sparse account about Grissom's participation in the approval of an appeal is not sufficient to support any cognizable claims against her.

pay the required filing fees and to prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[3]  28 U.S.C. § 1915(g).  Plaintiff was warned not to raise new and unrelated claims in his amended complaint.  Because Plaintiff's strip search claim involves separate defendants and does not arise out of the same "transaction, occurrence, or series of transactions" as his other claims, it must be brought in a separate action.

Similarly, Plaintiff alleges that Defendant Riezebos falsified an RVR which caused Plaintiff to lose privileges and prejudiced Plaintiff's suitability for parole.  Plaintiff alleges that Riezebos did so after Plaintiff threatened to exercise his First Amendment right to petition the government by filing a grievance against Defendant Riezebos for harassment.  While Plaintiff may have a cognizable claim for retaliation against Riezebos, his retaliation claim would be legally and factually unrelated to his other claims under the Free Exercise Clause, Equal Protection Clause, and the RLUIPA.  Thus, Plaintiff must raise this claim in a separate lawsuit.

**IV.    Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Wegman, Ortiz, Howard, and Bradley for violation of Plaintiff's right to free exercise of religion and violation of the RLUIPA.  Plaintiff's complaint also states cognizable claims against Defendants Wegman, Ortiz, Howard, Bradley, and Gonzales for violation of the Equal Protection Clause.  Plaintiff's complaint fails to state any other claims against any other defendants.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will

///

---

[3]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee unless they have previously filed three frivolous suits as a prisoner.  28 U.S.C. §1915(a),(g).

forward Plaintiff five (5) summonses and five (5) USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

///

///

14

Based on the foregoing, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.     Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a.     File an amended complaint curing the deficiencies identified by the Court in this order, or

    b.     Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Wegman, Ortiz, Howard, Bradley for violation of the First Amendment and RLUIPA, and against Defendants Wegman, Ortiz, Howard, Bradley, and Gonzales for violation of the Fourteenth Amendment; and

3.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   November 10, 2009               /s/ Sandra M. Snyder**
                                           UNITED STATES MAGISTRATE JUDGE