IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN B. WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW CATE, et al.,<br><br>　　　　Defendants.<br>_____/ | Case No. 1:09-cv-00468 OWW JLT (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 49) |

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss filed June 22, 2010. Therein, Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing this action. Plaintiff has opposed the motion, arguing that he was precluded from exhausting his administrative remedies because his inmate appeals were improperly screened. In reply, Defendants reiterate that Plaintiff's inmate appeals regarding the claims in this action have never been appealed to or decided at the final level of review. For the reasons set forth below, the Court recommends that the motion be **GRANTED IN PART** and **DENIED IN PART**.

### I.  BACKGROUND

This action is proceeding on Plaintiff's amended complaint. (Doc. 12.) The Court screened the amended complaint and found that it stated several cognizable claims against prison officials at Kern Valley State Prison ("KVSP"). (Doc. 17.) First, Plaintiff's allegation that he and other members of the

House of Yahweh faith were denied dietary accommodations for the "Feast of Passover/Unleavened Bread" stated cognizable claims against Defendants Wegman, Ortiz, and Howard for violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (Id. at 6.) Second, Plaintiff's allegation that he and other members of the House of Yahweh faith were denied kosher meals stated cognizable claims against Defendants Wegman and Howard for violations of the First Amendment and RLUIPA.[1] (Id.) Third, Plaintiff's allegation that he and other members of the House of Yahweh faith were unable to attend religious services, denied access to the prison chapel, and had their orders for religious artifacts returned stated cognizable claims against Defendant Bradley for violations of the First Amendment and RLUIPA. (Id.) Fourth, Plaintiff's allegation that members of other faiths received accommodations that were not afforded to members of the House of Yahweh faith, including funding for activities, dietary accommodations, and access to religious services, stated cognizable claims against Defendants Wegman, Gonzales, Howard, Ortiz, and Bradley for violations of the Equal Protection Clause of the Fourteenth Amendment. (Id. at 8.)

On June 22, 2010, Defendants filed the instant motion to dismiss. (Doc. 49.) Defendants argue therein that Plaintiff failed to exhaust all available administrative remedies prior to filing suit against Defendants Wegman, Gonzales, Howard, and Ortiz.[2] (Id.) Plaintiff filed an opposition to the motion on July 1, 2010. (Doc. 55.) Defendants filed a reply on July 13, 2010. (Doc. 56.)

**II.   DISCUSSION**

    **A.   Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are thus required to exhaust all available

---

[1] To the extent that the screening order was ambiguous, the Court clarifies that Plaintiff's allegations regarding the denial of kosher meals and the denial of an eight-day feast for the "Feast of Passover/Unleavened Bread" state separate and distinct claims under the First Amendment and RLUIPA.

[2] The pending motion to dismiss does not concern Plaintiff's claims against Defendant Bradley. (Doc. 49-1 at 2 n. 2.) As Defendants correctly note, Defendant Bradley has yet to be served with a summons and complaint in this case. (See Doc. 37.) The Court will address this matter in a separate order.

administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion of administrative remedies is mandatory regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies, an inmate must comply with the prison's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 93 (2006). In California, the Department of Corrections and Rehabilitation has established an administrative grievance system for prisoner complaints. See Cal. Code Regs, tit. 15 § 3084.1 (West 2011). Prisoners may appeal any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare. Id. at § 3084.1(a). The process is initiated by a prisoner submitting a CDCR Form 602, which is also known as an "inmate appeal." Id. at § 3084.2(a). The inmate appeal typically proceeds through four levels of review: an informal level, the first formal level, the second formal level, and the third formal level, also known as the "Director's Level." Id. at § 3084.7. A final decision from the Director's Level of review typically satisfies the exhaustion requirement under § 1997e(a). See, e.g., Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal 1997).

The exhaustion requirement is not jurisdictional, but rather creates an affirmative defense that a defendant may raise in a unenumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003). The defendant bears the burden of raising and proving the absence of exhaustion. Id. at 1119. In deciding the motion, "the court may look beyond the pleadings and decide disputed issues of fact." Id. If the court concludes that the prisoner has not exhausted all of his available administrative remedies, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. If a complaint contains exhausted and unexhausted claims, "the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

**B.    Plaintiff's Inmate Appeals**

Defendants contend that Plaintiff filed two inmate appeals relating to the claims in this action. (Doc. 49-1 at 2.) As support, Defendants submit a declaration by D. Tarnoff, the Appeals Coordinator at KVSP. (Doc. 49-3 at 1-3.) According to D. Tarnoff, a review of Plaintiff's inmate appeal record at KVSP reveals that Plaintiff filed the following grievances: (1) Appeal #KVSP-O-09-00198 wherein

3

Plaintiff complains that he is not being provided a kosher diet; and (2) Appeal #KVSP-O-08-2254 in which Plaintiff complains that he and other members of the House of Yahweh faith are being denied religious services, funding for activities, and access to the chapel. (Id. at 3.) These grievances are examined in further detail below.

### 1.     Appeal #KVSP-O-00108

Plaintiff submitted Appeal #KVSP-O-00108 on December 28, 2008. (Doc. 49-3 at 20.) In this appeal, Plaintiff complained that he was receiving a vegan diet and not a kosher diet as requested. (Id.) Plaintiff clarified that he is not a vegan and his religion does permit him to eat kosher meats. (Id.) In the "Action Requested" box, Plaintiff requested that he be removed from the vegan diet list and instead be provided with kosher meals. (Id.)

The appeal was granted at the informal level and returned to Plaintiff on December 31, 2008. (Id.) Plaintiff was removed from the vegan diet list. (Id.) However, to be placed on the kosher meal list, the reviewing officer informed Plaintiff that he needed to obtain approval from KVSP; approvals from other prisons would not be honored. (Id.) Plaintiff would receive regular meals until he obtained proper authorization for a kosher diet at KVSP. (Id.)

On January 6, 2009, Plaintiff attempted to appeal the decision to the first level of review. (Id.) In the appeal, Plaintiff complained that he has been issued a kosher diet card for KVSP, which he has shown to custody officers and food staff. (Id.) Nevertheless, Plaintiff was still being denied kosher meals. (Id.) Plaintiff claimed that the Jewish Chaplain informed him that only Jewish inmates would receive kosher diets. (Id.)

In a letter dated January 13, 2009, Plaintiff was notified that the appeal had been screened-out because he had filed more than one non-emergency appeal within a seven-day period. (Id. at 22.) In response, Plaintiff resubmitted the appeal on January 18, 2009, so that it could be re-processed during the following week. (Id.)

By memorandum dated January 27, 2009, the appeal was partially granted at the first level of review. (Id. at 19.) The correctional food manager and the associate warden at KVSP responded that the central kitchen would place Plaintiff on the kosher diet list once he was approved by the Jewish Chaplain. (Id.) Plaintiff was informed that he could appeal to the second level of review if he was in

any way dissatisfied with the given response. (Id.)

On February 16, 2009, Plaintiff attempted to appeal the decision to the second level of review. (Doc. 55-1 at 55.) Plaintiff complained that he had requested several interviews regarding the matter with the Jewish Chaplain and Cheryl Wegman, the Community Partnership Manager responsible for approving certain religious accommodations at KVSP. (Id.; see Doc. 55 at 63.) However, Plaintiff was informed that the Jewish Chaplain had quit and that KVSP no longer employs a Jewish Chaplain. (Doc. 55-1 at 55.) In light of this information, Plaintiff requested that officials honor his kosher diet card for KVSP. (Id.)

In a letter dated February 20, 2009, Plaintiff was notified that the appeal had been screened-out. (Id. at 61.) Plaintiff was informed that he had "failed to reasonably demonstrate that the issue [he was] appealing adversely affect[ed his] welfare, pursuant to CCR 3084.1(a)." (Id.) Plaintiff was also told that time constraints for the appeal had not been met. (Id.)

**2.     Appeal #KVSP-O-02254**

Plaintiff filed Appeal #KVSP-O-02254 on October 8, 2008. (Doc. 49-3 at 12.) Therein, Plaintiff complained that members of the House of Yahweh were not being provided the same accommodations that members of other faiths had been afforded. (Id. at 15.) In particular, Plaintiff complained that members of the House of Yahweh faith were being denied access to the chapel, were not receiving funding for religious materials, and were not receiving meals adhering to the dietary restrictions of their faith. (Id. at 13, 15.) As relief, Plaintiff requested access to the chapel on the Saturdays of that month, 24 kosher meals to be served at the Saturday services, the chapel's schedule and attendance log for the past two months, and the disclosure of all funds allotted to other religious groups and programs. (Id. at 12, 15-17.)

Defendant Bradley denied the appeal at the informal level and returned it to Plaintiff six days later on October 14, 2008. (Id. at 12.) Defendant Bradley stated that members of the House of Yahweh faith would be given access to the chapel on Saturdays when a chaplain or volunteer became available. (Id.) Defendant Bradley assured Plaintiff that his religious group was not being discriminated against, although Defendant Bradley was unable to provide Plaintiff with a breakdown of the religious budget. (Id.) Defendant Bradley concluded that Plaintiff could appeal to the first level of review if he was in any

way dissatisfied with the given response. (Id.)

On October 16, 2008, Plaintiff appealed the decision to the first level of review. (Id.) Plaintiff acknowledged his interview with Defendant Bradley; however, Plaintiff complained that some issues in his appeal remained unresolved. (Id.) In particular, Plaintiff still sought the disclosure of funds allotted to other religious groups and programs. (Id.) In addition, Plaintiff sought a response regarding the alleged discrimination against from Cheryl Wegman. (Id.)

By memorandum dated October 29, 2008, the appeal was partially granted at the first level of review. (Doc. 49-3 at 14.) Associate Warden Grissom noted that Plaintiff had been interviewed by Defendant Bradley and was told that KVSP did not have chaplain coverage on Saturdays. (Id.) Thus, the members of the House of Yahweh faith would not be given access to the chapel at that time. (See id.) Plaintiff was informed that he could appeal to the second level of review if he was dissatisfied with the given response. (Id.)

Plaintiff attempted to appeal the decision to the second level of review thereafter. However, by letter dated November 24, 2008, Plaintiff was notified that the appeal had been screened-out because he was "attempting to change [the] original appeal issue." (Doc. 55-1 at 14.) In response, on December 1, 2008, Plaintiff attempted to resubmit the appeal. (Id.) Plaintiff argued that he had not changed the issues in his appeal and that his request for the disclosure of funds allotted to religious groups had been made in his original appeal. (Id.) Nevertheless, in a letter dated December 8, 2008, Plaintiff was told that his appeal had been screened-out once again because he was "attempting to change [the] original appeal issue." (Id. at 15.)

On December 14, 2008, Plaintiff attempted to submit the appeal to the second level of review for the third time. In doing so, Plaintiff wrote:

> Inmate/Prisoner Responds that he is not changing Original Appeal issue, There has been no Chapel Access nor other Accommodations For House Of Yahweh-Faith Inmate Group since this appeal and issues Recorded. 1st Level said I may Appeal Issue to the 2nd Level if not satisfied, I AM NOT SATISFIED W/DECISSION [sic], AND THE INACTION AND ESTOPPEL TACTICS TO DENY ME EXHAUSTION APPEAL REMEDIES.

(Doc. 55-1 at 15) Despite Plaintiff's direction, Plaintiff was notified in a letter dated December 19, 2008 that the appeal had been screened-out because he was "attempting to change [the] original appeal issue."

6

(Doc. 55-1 at 16)

Plaintiff then attempted to submit the appeal to the second level of review for the fourth time. This time, Plaintiff stated: "Proceed on original Issue[.] I am not satisfied. Action requested was not fulfilled." (Doc. 55-1 at 16) By letter dated January 13, 2009, Plaintiff was told that the appeal had been screened-out because too much time had lapsed between the appeal and the contested action or decision. (Id. at 17.) Plaintiff was instructed to submit an explanation why he was unable to timely file the appeal if he wished to pursue the matter further. (Id.)

On January 15, 2009, Plaintiff submitted the appeal to the second level of review for the fifth time with the following response:

> The Appeal was submitted in a timely fashion, and in accordance with CDCR– Title 15. Regulations. [H]owever do [sic] to your appeal screen out estoppel tactics to deny my right of appeal, and violate my Administrative Due Process, the 602 has been const7antly [sic] sent back and forth between me and you/your office. See the evidence I appreciate you documenting for me, as attached original copies.

(Doc. 55 at 17) The appeal was screened-out once again. (Id. at 18.) In a letter dated January 28, 2009, Plaintiff was told that he was "attempting to change [the] original appeal issue" and that the appeal was untimely. (Id.) Plaintiff was also informed that if he "continue[d] to submit this appeal it [would] be confiscated by the appeals office." (Id.)

### C. Plaintiff's Failure to Exhaust

Defendants contend that Plaintiff failed to exhaust his administrative remedies because neither Appeal #KVSP-O-00108 nor Appeal #KVSP-O-02254 were appealed to or decided at the Director's Level of review. (Doc. 49-1 at 4.) In Defendants' view, Plaintiff simply failed to complete the inmate appeals process. (Id.; Doc. 56 at 2-3.) Defendants submit the declaration of D. Foston, Chief of the Inmate Appeals Branch for the CDCR, as support for their argument. (Doc. 49-2.) According to D. Foston, there is no record of Appeal #KVSP-O-00108 or Appeal #KVSP-O-02254 in the Director's Level database. (Id. at 3.)

In his opposition to the pending motion, Plaintiff does not dispute Defendants' contention that Appeal #KVSP-O-00108 and Appeal #KVSP-O-02254 were never decided at the Director's Level of review. Rather, Plaintiff argues that the appeals coordinator at KVSP screens-out and rejects inmate appeals without cause or any legitimate penological purpose. (Doc. 55 at 3.) Thus, in Plaintiff's view,

7

his ability to exhaust his administrative remedies was effectively thwarted by the improper screening of his appeals. (Id. at 3-4.) Moreover, Plaintiff argues that prison officials have had ample notice of his claims through other means of communication. (Id. at 1-2.)

The PLRA only requires an inmate to exhaust administrative remedies that "are available." 42 U.S.C. § 1997e(a). When circumstances render administrative remedies "effectively unavailable" an inmate is excused from the exhaustion requirement. See Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (Warden's mistake rendered administrative remedies unavailable, thereby excusing inmate from his failure to exhaust). See also Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007) (threats by prison officials may render administrative remedies unavailable); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006) (same); Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (administrative remedies unavailable where prison officials erroneously told the inmate he must wait until an investigation was complete). Accordingly, the Court must determine whether the improper screening of Plaintiff's appeals rendered administrative remedies "effectively unavailable" so as to excuse Plaintiff from his otherwise apparent failure to exhaust.

### D.   Improper Screening as an Exception to Exhaustion

The Ninth Circuit has held that "if prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). In that situation, administrative remedies are "'effectively unavailable' such that exhaustion is not required under the PLRA." Id. To fall within this exception, the inmate must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. Id. In particular, the inmate must establish that (1) he actually filed a grievance that, if pursued through all the levels of the appeals process, would have sufficed to exhaust the claims he now seeks to pursue; and (2) prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. Id. at 823-24.

#### 1.   Sufficiency of Plaintiff's Appeals

"A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Id. at 824. "To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." Id. (citing Jones, 549 U.S. at 218). In

California, an inmate is required to "describe the problem and the action requested" in his appeal. Cal. Code Regs. tit. 15, § 3084.2(a). Accordingly, a inmate appeal suffices under California's regulations "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citation omitted).

The Court finds that Appeal #KVSP-O-00108 and Appeal #KVSP-O-02254 sufficiently alerted prison officials to the nature of several of Plaintiff's claims in this action. First, Appeal #KVSP-O-00108 alerted prison officials to Plaintiff's complaint that he was not being provided kosher meals in accordance with his religion. In this appeal, Plaintiff clearly requested to be removed from the vegan diet list and placed on the kosher diet list. Thus, had this appeal been pursued through all the levels of review, it would have sufficed to exhaust Plaintiff's First Amendment and RLUIPA claims against Defendants Wegman and Howard regarding this issue.

Second, Appeal #KVSP-O-02254 alerted prison officials to Plaintiff's complaint that he and other members of the House of Yahweh faith were not given the same privileges as those afforded to members of other faiths. In this appeal, Plaintiff explicitly alleges that unlike other religions, the House of Yahweh was being denied funding for religious activities, dietary accommodations, and access to religious services. Thus, had this appeal been pursued through all the levels of review, it would have sufficed to exhaust Plaintiff's current equal protection claims against Defendants Wegman, Gonzales, Howard, and Ortiz.

The only claims that remain unexhausted is Plaintiff's First Amendment and RLUIPA claims against Defendants Wegman, Ortiz, and Howard regarding the alleged denial of dietary accommodations for the "Feast of Passover/Unleavened Bread." Defendants declare that they were unable to locate any inmate appeal regarding this matter. (Doc. 49-3 at 3.) Plaintiff has not provided any evidence that such an appeal was ever filed.

### 2. Impropriety of the Screening

In California, an appeals coordinator screens each appeal before forwarding it for review on the merits. Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may screen-out an inmate appeal for several reasons, including untimeliness or incompleteness. See id. at § 3084.6. When an appeal is screened-out, the inmate must be notified of the reasons for the rejection and the corrections that are

9

needed in order for the appeal to be accepted. Id. at § 3084.5(b)(3). In general, an inmate must file an appeal or amended appeal within fifteen working days of the disputed action or adverse decision. Id. at § 3084.6(c) (West 2009).

### a.    Appeal #KVSP-O-00108

On February 10, 2008, Plaintiff received notice that his grievances in Appeal #KVSP-O-00108 were partially granted at the first level of review. (Doc. 49-3 at 21.) Plaintiff attempted to submit the appeal for review at the second level thereafter. (Doc. 55-1 at 55.) However, the appeals coordinator screened-out the appeal. (Id. at 61.) The reasons given for rejecting the appeal were: (1) Plaintiff had failed to reasonably demonstrate that the issue he was appealing adversely affected his welfare; and (2) the appeal was untimely. (Id.)

Pursuant to California Code and Regulations Title 15 Section 3084.1, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In Appeal #KVSP-O-00108, Plaintiff complained that he was not provided kosher meals in accordance with his religious beliefs. This "condition" certainly adversely affected Plaintiff's welfare, and he was right in seeking redress for this issue through the grievance process. To find otherwise would effectively foreclose an inmate's ability to rectify violations of religious beliefs within the prison system; that cannot be the case. The appeals coordinator improperly screened-out Plaintiff's appeal for this reason.

Any contention that the appeal was untimely also plainly lacks merit. Pursuant to California's regulations, an inmate must file an appeal or amend a screened-out appeal within 15 days of *receiving* an unacceptable decision. See Cal. Code Regs. tit 15, § 3084.6(c) (West 2009). In this case, Plaintiff received his appeal form from the first level of review, along with the attached memorandum denying the appeal, on February 10, 2009. (Doc. 49-3 at 21.) The fact that the memorandum was dated January 27, 2009 is immaterial. (Id. at 19.) Six days later, on February 16, 2009, Plaintiff submitted the appeal form for review at the second level. (Doc. 55-1 at 55.) The date stamp on the appeal form indicates that the appeals coordinator received the appeal by February 18, 2009. (Id. at 54.) Because the appeal form was submitted within the fifteen-day time limit, the rejection of the appeal on the basis of untimeliness

was improper.

Nevertheless, the improper screening of Appeal #KVSP-O-00108 did not completely preclude Plaintiff from exhausting his administrative remedies. That might have been the case had the appeals coordinator affirmatively foreclosed the possibility of Plaintiff taking any further action regarding the appeal. (See id. at 18.) However, here, Plaintiff was afforded an opportunity to contest the screening decision. (Id. at 61.) Albeit in boilerplate fashion, Plaintiff was notified that within 15 days, he could return the appeal to the appeals coordinator for reconsideration. (Id.) Plaintiff has not provided any evidence demonstrating that he took advantage of this procedure. Nor is there any evidence showing that Plaintiff was thwarted by prison officials from utilizing this procedure. Instead, it appears from the record that Plaintiff simply abandoned Appeal #KVSP-O-00108 and opted to start the appeals process anew. (See id. at 62.)

Although the Ninth Circuit has not explicitly held that an inmate must challenge an improper screening when possible before he is excused from the exhaustion requirement, the Ninth Circuit has suggested in as much. See Sapp, 623 F.3d at 826 (noting that if plaintiff thought officials improperly screened-out his appeal, he could have contested the decision "as boilerplate text at the bottom of the screening form advised him he could do"). See also Anderson v. Tilton, No. C 08-3204 MMC (PR), U.S. Dist. LEXIS 1698, at *16-18 (N.D. Cal. Jan. 4, 2011) (plaintiff not excused from his failure to exhaust administrative remedies where there was no evidence showing that he attempted to contest the screening decision). This is in accord with the Supreme Court's holding that proper exhaustion under the PLRA requires compliance will *all* the prison's deadlines and critical procedural rules. Ngo, 548 U.S. at 90-91. See also Griffin, 557 F.3d at 1120 ("[A] prison's own procedures define the contours of proper exhaustion.") (citing Jones, 549 U.S. at 218).

Moreover, requiring an inmate to contest an improper screening, when possible, promotes the PLRA's goal of efficiency by "reduc[ing] the quantity and improv[ing] the quality of prisoner suits." Ngo, 548 U.S. at 94 (quoting Nussle, 534 U.S. at 524). First, this procedure will dissuade an inmate from short-circuiting the inmate appeals process. An inmate will be less inclined to prematurely file in federal court with the hope that the court will agree that his appeals were improperly screened-out, an argument that district courts are all too familiar with. Second, if in fact an inmate's appeals are being

11

improperly screened-out, requiring an inmate to contest the decision, when possible, before abandoning the appeals process altogether "produce[s] a useful record for subsequent judicial consideration." Ngo, 548 U.S. at 89 (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). An undeveloped record and the lack of evidence often stymie the court's ability to determine whether an inmate's grievances have been properly screened.

In reaching this conclusion, the Court does not mean to subject an inmate to an endless cycle in which he must indefinitely utilize the boilerplate procedure to contest a screening decision. As noted above, if the appeals coordinator explicitly forecloses any opportunity to contest the screening decision, thereby overriding the boilerplate language, then the appeals process is at an end and the inmate is free to argue in court that improper screening rendered his administrative remedies effectively unavailable. If, however, the appeals coordinator allows an inmate to challenge the screening decision, the inmate must take advantage of that opportunity. Then, if the appeals coordinator continues to deny the appeal for improper reasons, the inmate may reasonably conclude in good faith that his administrative remedies are, in effect, unavailable. Under those circumstances, the inmate may very well be excused from his failure to exhaust administrative remedies. See Sapp, 623 F.3d at 826. ("We [the Ninth Circuit] do not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable.")

In this case, the record does not reflect that Plaintiff failed to exhaust Appeal #KVSP-O-00108 because he was thwarted by improper screening of the appeal. As the screening decision made clear, administrative relief remained "available" since Plaintiff could have contested the screening decision, a procedure that Plaintiff was well-familiar with. (See, e.g., Doc. 55-1 at 12, 14-17.) Nor did "repeat rejections" excuse Plaintiff's failure to contest the screening decision; the appeal was screened-out only once. Rather, the record shows that Plaintiff failed to exhaust Appeal #KVSP-O-00108 because he elected not to proceed any further on the appeal. Accordingly, Plaintiff should not be excused from his failure to exhaust this appeal due to improper screening.

            **b.**      **Appeal #KVSP-O-02254**

On November 6, 2008, Plaintiff received notice that his grievances in Appeal #KVSP-O-02254

were partially granted at the first level of review. (Doc. 49-3 at 13.) Plaintiff attempted to appeal the decision to the second level of review thereafter. But, in a letter dated November 24, 2008, Plaintiff was informed that the appeal had been screened-out because he was attempting to change the original appeal issue. (Doc. 55-1 at 14.) The Court is unable to conclude that the rejection of the appeal for this reason was improper. Plaintiff has failed to provide the appeal form which he submitted to the second level of review. To the extent that Plaintiff did try raise new issues in the appeal, the appeals coordinator was correct in screening-out the appeal. Under California's regulations, an inmate may not change the issue of his original appeal mid-course. See Cal. Code Regs. tit 15, § 3084.6(b)(16). New issues must be raised at the informal or, where appropriate, first level of review. See id.

On December 1, 2008, Plaintiff timely contested the screening decision. (Doc. 55-1 at 14.) In that appeal, Plaintiff asserted that he was not changing the issue of his appeal. (Id.) Plaintiff explained that he was still complaining about the discrimination faced by members of the House of Yahweh. (See id.) Plaintiff reiterated that his request for records relating to the funds allotted to other religious groups was made in his original appeal. (Id.) Nevertheless, in a letter dated December 8, 2008, Plaintiff was notified that the appeal had been screened-out once again because he was still attempting to change the original appeal issue. (Id. at 15.)

The Court finds that there is sufficient evidence to demonstrate that Appeal #KVSP-O-02254 was improperly screened at this time. As Plaintiff makes clear in his December 1, 2008 submission, he wished to protest the perceived discrimination against his religion and sought the disclosure of funds allotted to other religious groups. (Id. at 14.) This is the exact same issue presented by Plaintiff in his original appeal. (Doc. 49-3 at 12, 15.) The appeals coordinator's contention to the contrary is entirely without merit.

On December 14, 2008, Plaintiff again timely contested the screening decision. (Doc. 55-1 at 15.) This time, Plaintiff was explicit that he sought to appeal the same issues that were presented in his original appeal:

> Inmate/Prisoner Responds that he is not changing Original Appeal issue, There has been no Chapel Access nor other Accommodations For House Of Yahweh-Faith Inmate Group since this appeal and issues Recorded. 1st Level said I may Appeal Issue to the 2nd Level if not satisfied, I AM NOT SATISFIED W/DECISSION [sic], AND THE INACTION AND ESTOPPEL TACTICS TO DENY ME EXHAUSTION APPEAL

13

1    REMEDIES.

2 (Id.) Despite Plaintiff's clear direction, Plaintiff was notified in a letter dated December 19, 2008 that

3 the appeal had been screened-out because he was still "attempting to change [the] original appeal issue."

4 (Id. at 16.)

5    It is now clear that the appeal was screened for improper reasons.  The appeal was screened-out

6 for the same reason – changing the issue – despite Plaintiff's explicit instruction that he was seeking to

7 appeal the issues presented in his original appeal.  Although the boilerplate in the screening decision

8 allowed Plaintiff to contest the decision for a third time, which in fact Plaintiff did do, an inmate should

9 not be sentenced to an endless cycle of needless appeals.  At that point, "the repeated rejections of [his]

10 grievances at the screening stage" for improper reasons effectively made administrative remedies

11 unavailable to Plaintiff.  Sapp, 623 F.3d at 826.  To hold otherwise would undermined the PLRA by

12 providing an incentive for prison officials to "avoid meaningful consideration of inmates' grievances

13 by screening them for improper reasons."  Id. at 823.  Accordingly, the Court concludes that Plaintiff

14 should be excused from his failure to exhaust Appeal #KVSP-O-02254.

15    **E.    Other Exceptions to Exhaustion**

16    In Sapp, the Ninth Circuit identified other potential exceptions to exhaustion.  First, an inmate

17 may be excused if "the prison had created draconian procedural requirements that would 'trip [] up all

18 but the most skillful prisoners.'" Id. at 827.  Second, an inmate may be excused for equitable reasons.

19 See id.  Neither exception, however, applies here.  It is true that on some occasions the appeals process

20 at KVSP appears to have been inadequate, as demonstrated above.  Nevertheless, Plaintiff has shown

21 his ability to navigate the process to exhaust his grievances at the Director's Level during the relevant

22 time period.  (See Doc. 49-2 at 6-10; Doc. 49-3 at 6-10.)  Thus, the Court is unwilling to conclude that

23 the appeals process was so "draconian" that Plaintiff should be excused from even attempting to file an

24 appeal, which appears to be the case with respect to his allegations that he was denied accommodations

25 for the "Feast of Passover/Unleavened Bread."

26    To the extent that Plaintiff argues that an equitable exception is warranted in this case because

27 he has provided notice of his claims through alternative avenues of communication, his argument is

28 misguided.  The Court acknowledges Plaintiff's voluminous correspondence with various officials

regarding some of the issues in this action. (See Doc. 55-1 at 22-58.) Nevertheless, the Supreme Court has made clear that proper exhaustion under the PLRA requires an inmate to comply with the prison's procedural rules for doing so. Ngo, 548 U.S. at 93. In California, this means filing an inmate appeal and pursuing the matter through the prison's grievance system. See Cal. Code Regs, tit. 15 § 3084.1. Plaintiff is not free to exhaust his claims in any other way.

### III.   CONCLUSION

Plaintiff does not dispute that he did not exhaust his inmate appeals regarding his claims in this action at the Director's Level of review. However, Plaintiff has demonstrated that his inmate appeal regarding his equal protection claims, Appeal #KVSP-O-02254, was improperly screened and rejected. Accordingly, for all the reasons set forth above, it is **HEREBY RECOMMENDED** that Defendants' motion to dismiss for Plaintiff's failure to exhaust be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff's First Amendment and RLUIPA claims against Defendants Wegman, Ortiz, and Howard regarding the denial of dietary accommodations for the "Feast of Passover Unleavened Bread" be **DISMISSED** without prejudice for Plaintiff's failure to exhaust administrative remedies;

2. Plaintiff's First Amendment and RLUIPA claims against Defendants Wegman and Howard regarding the denial of kosher meals be **DISMISSED** without prejudice for Plaintiff's failure to exhaust administrative remedies; and

3. This action be allowed to proceed on Plaintiff's equal protection claims against Defendants Wegman, Gonzales, Howard, Ortiz regarding allegations of discrimination against Plaintiff as a member of the House of Yahweh faith.

///
///
///
///
///
///

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 21 days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 8, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                                          UNITED STATES MAGISTRATE JUDGE