**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLEN B. WILLIAMS, | ) Case No.: 1:09-cv-00468 - LJO - JLT (PC) |
| Plaintiff, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING DEFENDANTS' MOTION FOR |
| v. | ) SUMMARY JUDGMENT |
| | ) |
| MATTHEW CATE, et al., | ) |
| | ) (Doc. 108) |
| Defendants. | ) |
| | ) |
| | ) |

Defendants Gonzalez, Wegman, Howard, Ortiz and Bradley (collectively, "Defendants") seek summary judgment and dismissal of the action initiated by Allen Williams ("Plaintiff").  (Doc. 108). Plaintiff filed an opposition to the motion on March 22, 2012.  (Doc. 124).

For the following reasons, the Court recommends Defendants' motion for summary judgment be **GRANTED**.

I.      **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, a prisoner at Kern Valley State Prison ("KVSP"), commenced this action by filing a complaint against KVSP employees for civil rights violations pursuant to 42 U.S.C. § 1983 on March 12, 2009.  (Doc. 1).  The Court screened Plaintiff's complaint and dismissed it with leave to amend on July 31, 2009.  (Doc. 11).  Accordingly, Plaintiff filed his First Amended Complaint on August 28, 2009.  (Doc. 12).  In addition, Plaintiff filed a motion for class certification (Doc. 14), which was denied by the Court on September 10, 2009.  (Doc. 15).

1

The Court screened Plaintiff's First Amended Complaint on November 10, 2009.  (Doc. 17).  Plaintiff alleged that he requested dietary accommodations for his House of Yahweh faith, but the request was denied by defendant Wegman, who informed Plaintiff that defendant Ortiz "did not recognize [the] right to have the eight day Feast of Passover/ Unleavened Bread."  (Doc. 12 at 13).  Also, Plaintiff asserted defendant Howard did not allow Plaintiff to have the kosher foods received by Jewish inmates.  *Id.*

In addition, Plaintiff alleged he was discriminated against on the basis of his religion because defendants Bradley, Wegman, and Gonzales provided Christian and Jewish inmates with funds from the "Religious Service Budget," but House of Yahweh inmates did not receive similar funds.  (Doc. 12 at 15).  Further, Plaintiff alleged defendant Bradley conducted religious services for inmates of other religions, but refused to conduct religious services for House of Yahweh inmates.  *Id.* at 14.

Given these factual allegations, the Court determined Plaintiff stated cognizable claims for violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against defendants Wegman, Ortiz, Howard, and Bradley.  (Doc. 17 at 15).  In addition, Plaintiff stated a cognizable claim against defendants Wegman, Ortiz, Howard, Bradley, and Gonzalez for a violation of the Fourteenth Amendment's equal protection clause.  *Id.*  Plaintiff was directed to notify the Court if he wished to proceed on these claims alone, or file a second amended complaint.  *Id.* at 14-15.  Plaintiff chose to proceed on the claims identified by the Court (Doc. 18), and the Court dismissed the other causes of action and defendants on January 26, 2010.  (Doc. 26).

On June 22, 2010, Defendants moved to dismiss the action for failure to exhaust administrative remedies.  (Doc. 49).  The Court determined Plaintiff failed to exhaust administrative remedies for his First Amendment and RLUIPA claims regarding the Feast of Passover/Unleavened Bread in 2009.  (Doc. 71 at 4).  Accordingly, these claims were dismissed, and the matter proceeded on the following causes of action: "(1) Plaintiff's First Amendment and RLUPA claims against Defendants Wegman and Howard regarding the denial of kosher meals; and (2) Plaintiff's equal protection claims against Defendants Wegman, Ortiz, Gonzales, and Howard regarding discrimination against Plaintiff as a member of the House of Yahweh faith."  *Id.*  The motion to dismiss did not address claims against

2

1  defendant Bradley, who had not been served with the summons and complaint at the time the motion

2  was filed.  (Doc. 63 at 2 n.2)

3      On March 2, Defendants filed the motion for summary judgment now pending before the

4  Court.  (Doc. 108).  Plaintiff filed his opposition to the motion on March 22, 2012.  (Doc. 124).[1]

5  **II.    STANDARDS FOR SUMMARY JUDGMENT**

6      The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order

7  to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio*

8  *Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is

9  "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

10  Fed. R. Civ. P. 56(a).  Summary judgment should be entered, "after adequate time for discovery and

11  upon motion, against a party who fails to make a showing sufficient to establish the existence of an

12  element essential to that party's case, and on which that party will bear the burden of proof at trial."

13  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

14      A party seeking summary judgment bears the "initial responsibility" of demonstrating the

15  absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only

16  if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact

17  is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty*

18  *Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th

19  Cir. 1987).  The party seeking summary judgment demonstrates it is appropriate by "informing the

20  district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions,

21  answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes

22  demonstrates the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (quoting Fed.

23  R. Civ. P. 56(c)).

24      If the moving party meets its initial burden, the burden then shifts to the opposing party to

25  present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e);

26  *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some

27

28      [1] On August 10, 2012, Plaintiff declined to supplement his brief after receiving notice of the requirements of an
opposition to summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).  (Doc.  134).

metaphysical doubt as to the material facts." *Id.* at 587.  The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  In addition, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Significantly, even if the motion is unopposed, a court cannot grant summary judgment solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  The court must apply standards consistent with Federal Rule of Civil Procedure 56 to determine whether the moving party has demonstrated that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings depositions, answer to interrogatories, and admissions on file.  *See* Fed. R. Civ. P. 56(c).

## III.   DISCUSSION AND ANALYSIS

Defendants contend summary judgment should be granted because Plaintiff's claims for violations of the First Amendment, Fourteenth Amendment, and RLUIPA are not supported by the facts.  Specifically, Defendants contend:

> This court should grant Defendants' summary judgment because: (1) Defendants Wegman and Howard did not have the authority to grant Williams the Jewish Kosher Diet; (2) Defendants Wegman and Howard are immune from monetary damages under RLUIPA; (3) Plaintiff's RLUIPA claim against Wegman and Howard seeking injunctive relief for the Jewish Kosher Diet is moot, since he has transferred to another institution; (4) Defendants did not intentionally discriminate against Williams on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups; and (5) Defendants' actions did not violate a clearly established constitutional or statutory rights of which a reasonable person would have known.

(Doc. 108-1 at 8).  On the other hand, Plaintiff contends summary judgment should not be granted

because Defendants had the authority to approve the Kosher diet that was requested, but "they chose to deny [the diet] and discriminate against Plaintiff."  (Doc. 124 at 7, 9).

**A.      Section 1983 Claims**

Notably, the amendments do not create direct causes of action.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 929 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution"). However, 42 U.S.C. § 1983 ("Section 1983") "is a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In pertinent part, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.  To demonstrate a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

Section 1983 requires a plaintiff to demonstrate a causal relationship between the actions of the defendants and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  The Ninth Circuit explained, "[a] person 'subjects' a another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**1.      Plaintiff's First Amendment Claim**

The First Amendment provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. . . ."  *U.S. Constitution, amend. I.*  Inmates "retain protections afforded by the First Amendment," including the free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Nevertheless, free-exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional

goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct he sincerely believes is mandated by his faith.  *Graham v. C.I.R.*, 822 F.2d 844, 850-51 (9th Cir. 1987).

In this case, Plaintiff asserts defendants Wegman and Howard violated his First Amendment rights by denying his request for a Kosher diet that would comply with his House of Yahweh faith.  The Ninth Circuit has held that inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (citation omitted).  Consequently, if an inmate is denied accommodation for his diet, the First Amendment may be implicated.

Significantly, however, defendants Wegman and Howard lacked the authority to approve Plaintiff's request for a kosher diet.  Rather, a Jewish Chaplin must determine whether an inmate should receive the kosher diet.  Cal. Code. Regs. Title 15, § 3054.2.  Specifically, the Regulations provide: "A Jewish Chaplin shall: (1) determine inmate entry into the Jewish kosher diet program, oversee the program, and determine Jewish inmate compliance violations."  *Id.* at § 3054.2(g).  As Assistant Correctional Food Manager, defendant Howard was not empowered to give Plaintiff a kosher diet.  (*Id.; see also* Howard Decl. ¶ 1).  Likewise, defendant Howard, a Community Resource Manager, lacked the authority under the Regulations to grant or deny a request for a kosher meal. (Wegman Decl. ¶ 1).

Plaintiff's First Amendment claim was grounded on the premise that defendants Wegman and Howard denied his request for kosher meals.  (Doc. 12 at 13).  However, Plaintiff does not identify evidence to support a finding that Wegman and Howard participated in the denial of his request for kosher meals.  Rather, these defendants lacked the authority to do so, and they have not prevented Plaintiff from engaging in conduct he believes to be mandated by his faith.  *See Graham*, 822 F.2d at 850-51.  These defendants have not been sufficiently linked to his alleged constitutional injury.  *See Johnson*, 588 F.2d at 743.  Accordingly, Wegman and Howard are entitled to summary adjudication on Plaintiff's claim for a violation of the First Amendment.  *See Johnson*, 588 at 743.

///

6

2.     Equal Protection Clause claim against all defendants

The Equal Protection Clause states that "no state shall… deny to any person within its jurisdiction the equal protection of the laws."  *U.S. Constitution, amend.* XIV §1.  In essence, this commands that all persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Prisoners are protected by the Equal Protection Clause from intentional discrimination based upon their religion.  *See, e.g., Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) ("the Equal Protection Clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts").

To establish a violation of the Equal Protection Clause, a plaintiff in a Section 1983 claim must show defendants, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).  A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995).  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original).  Therefore, to avoid summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the challenged conduct was motivated by discriminatory intent." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and quotation marks omitted).

Here, Plaintiff alleges defendants Bradley, Wegman, Ortiz, Gonzales, and Howard violated the Fourteenth Amendment by discriminating against him as a member of the House of Yahweh faith. (Doc. 12; Doc. 124 at 10).  According to Plaintiff, Defendants discriminated against him through the following acts:

> Denying Worship Services for the Sabbath of The House of Yahweh members/ participants; Denying requested/Applied for Kosher Diet meals and Passover Feast of Unleavened Bread meals, Denying Religious Dietary and food supplements outside of the regular quarterly package, and at times when inmates sought to use the quarterly package with a religious specialty vendor, packages were sent back/denied at times; Denying purchase of religious material equally among the various faiths; [and] spreading religious hate and violence propaganda against the House of Yahweh Faith Group and Headquarters of said religious organization . . .

7

(Doc. 124 at 10).  Significantly, however, the evidence presented by the parties does not support these allegations.  For example, Plaintiff provided a memorandum dated October 14, 2008 in which defendant Bradley, Protestant Chaplin at KVSP, recommended Plaintiff "be designated to coordinate and lead House of Yahweh services."  *Id.* at 11.  Defendant Wegman indicated she approved of this recommendation.  *Id.*  The parties do not dispute that the House of Yahweh chose to hold services on Saturdays.  However, use of the chapel on the weekend was limited, because "chapel access is subject to the availability of prison resources such as Chaplains, volunteers, and custody staff, and "[e]ach Chaplin usually works Monday through Friday."  (Wegman Decl. ¶¶ 3-4).

As discussed above, Defendants lacked the authority to approve a kosher diet, because not one of them is the Jewish Chaplin.  Further, Defendant Wegman explained she granted Plaintiff's request for a religious banquet, but "[t]his banquet was cancelled because one of the House of Yahweh members was involved in a stabbing the day of the banquet, and all House of Yahweh inmates were placed on lockdown for an investigation regarding their possible involvement in this altercation." (Wegman Decl. ¶ 8).  Plaintiff does not offer evidence to refute her statement.

With regard to religious material used by various faiths, Defendants report that no religious group or members received money from state or KSVP for the purchase of religious materials.  (*See* Gonzalez Decl. ¶ 4; Bradley Decl. ¶ 5; Wegman Decl. ¶ 5).  Rather, materials were donated from the community.  (Wegman Decl. ¶ 5).  For example, Bradley reported: "As the Protestant Chaplin, I received no funds from the State of California to purchase religious books or artifacts.  All worship aids that the religious groups received were through donations from the local community."  (Bradley Decl. ¶ 5).  Gonzalez, Correctional Business Manager, reported that "[t]here is no budget for religious books or artifacts."  (Gonzalez Decl. ¶ 4).

Finally, there is no evidence that Defendants spread propaganda against the House of Yahweh or its members.   Plaintiff fails to identify any evidence that Defendants discriminated against him, or that Defendants did so *because* he was a member of the House of Yahweh.  Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case," and as a result Defendants are entitled to summary adjudication on his claim of a violation of the Equal Protection Clause under the Fourteenth Amendment.  *See Celotex Corp.*, 477 U.S. at 322.

**B.      RLUIPA**

RLUIPA provides more stringent protections than those accorded by the First Amendment. Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-3(g)).

First, a plaintiff must show that the exercise of his religion is at issue; this includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  Next, the plaintiff bears the burden of establishing that the defendant's conduct substantially burdened his religious exercise. *See* 42 U.S.C. § 2000cc-1.  As discussed above, Plaintiff has not identified evidence that *Defendants* burdened his religious exercise by denying a kosher diet.  Accordingly, Defendants Wegman and Howard are entitled to summary adjudication of this claim.

**IV.     FINDINGS AND RECOMMENDATIONS**

Defendants have carried their burden to identify evidence that demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Plaintiff has not identified evidence to support a contention that a factual dispute exists.  Moreover, Plaintiff has failed to tender proof concerning elements of his Section 1983 claims, because Plaintiff has not identified evidence supporting his allegation that Defendants discriminated against him, or that they did so because of his faith.  Further, defendants Wegman and Howard lacked the authority to grant or deny Plaintiff's request for a kosher diet, and as such their conduct could not violate the First Amendment or RUILPA.

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections

with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 17, 2012**             **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE